OPINION OF THE COURT
 

 G.B. Smith, J.
 

 The issue in this case is whether a formal vote of 12 grand
 
 *549
 
 jurors is necessary to dismiss a charge. We conclude that it is and we affirm the order of the Appellate Division.
 

 On Friday, March 19, 1999, after hearing testimony from various witnesses, including defendant, regarding an alleged break-in, a grand jury in Bronx County was deliberating on proposed charges of burglary, attempted robbery, criminal possession of a weapon, menacing, endangering the welfare of a child and harassment. The record indicates that the foreperson advised the prosecutor that the grand jury was having difficulty reaching a decision. The prosecutor asked the grand jury to cease deliberations so that she could present additional evidence. The following week, the prosecutor reconvened the grand jury, presented another witness and again asked the jurors to vote on the charges. The grand jury returned an indictment accusing defendant of burglary in the first degree and related crimes.
 

 Defendant moved to dismiss the indictment, arguing that the initial failure of the grand jury to garner 12 votes for an indictment constituted a dismissal of the charges, thus requiring the prosecution to obtain leave of the court before presenting additional evidence to the grand jury. Supreme Court agreed, granted defendant’s motion and dismissed the indictment. The Appellate Division, with two Justices dissenting, reversed the order of Supreme Court and reinstated the indictment. The Court concluded that no inference of dismissal could be drawn from a grand jury’s temporary inability to vote for an indictment. Rather, the court held, a dismissal requires a concurrence of 12 grand jurors. The dissent reasoned that the Criminal Procedure Law does not require grand jurors to vote expressly on whether to dismiss a charge. A Justice of the Appellate Division granted defendant leave to appeal to this Court, and we now affirm the order of the Appellate Division. We hold that in order to dismiss a charge, there must be a formal vote of the grand jury and 12 of its members must concur in that result.
 

 CPL 190.25 (1) states:
 

 “Proceedings of a grand jury are not valid unless at least sixteen of its members are present. The finding of an indictment, a direction to file a prosecutor’s information, a decision to submit a grand jury report and every other affirmative official action or decision requires the concurrence of at least twelve members thereof.”
 

 The issue, therefore, is whether a dismissal of pending charges
 
 *550
 
 constitutes an affirmative official action or decision of the grand jury under CPL 190.25 (1). We agree with the Appellate Division that a dismissal is such an affirmative official action.
 

 The legislative history of grand jury procedure supports the conclusion that the dismissal of a charge is one of the official actions or decisions of a grand jury. Going back to the 19th century, New York’s former Code of Criminal Procedure required that upon failure of the grand jury to agree on an indictment, it must return a dismissal to the court, signed by the foreperson, expressly stating that the charge is dismissed. As originally enacted, Code of Criminal Procedure § 268 stated, in relevant part:
 

 “An indictment cannot be found, without the concurrence of at least twelve grand jurors. When so found it must be indorsed, ‘a true bill’, and the indorsement must be signed by the foreman of the grand jury.”
 

 Section 269 stated:
 

 “If twelve grand jurors do not concur in finding an indictment, the depositions (and statement, if any) transmitted to them, must be returned to the court, with an indorsement thereon, signed by the foreman, to the effect that the charge is dismissed.”
 

 Thus, even under the former procedural rules, a dismissal of a charge could not be merely inferred by the court, nor was it automatic upon the failure to indict. Rather, upon its determination that an indictment would not issue, the grand jury was required to expressly communicate to the court that the charges were to be dismissed.
 

 On September 1, 1971, the Code of Criminal Procedure was replaced by the Criminal Procedure Law (McKinney’s Cons Laws of NY, Book 11 A, at 1; L 1970, ch 996, § 1). CPL 190.60 enumerates the actions that the grand jury may take upon hearing and deliberating on evidence with respect to a charge. Pursuant to that provision, the grand jury has the power to indict a person for an offense, direct the district attorney to file a prosecutor’s information with a local criminal court, direct the district attorney to file a request to remove the case to Family Court, dismiss the charge or submit a grand jury report.
 

 Moreover, CPL 190.75 (1) states:
 

 “If upon a charge that a designated person commit
 
 *551
 
 ted a crime, either (a) the evidence before the grand jury is not legally sufficient to establish that such person committed such crime or any other offense, or (b) the grand jury is not satisfied that there is reasonable cause to believe that such person committed such crime or any other offense, it must dismiss the charge. In such case, the grand jury must, through its foreman or acting foreman, file its finding of dismissal with the court by which it was impaneled.”
 

 The language of both CPL 190.60 and 190.75 confirms that the Legislature did not intend that a grand jury’s dismissal of a charge be inferred from its failure to indict a suspect. Given that the grand jury also has the power to direct the filing of an information, to remove the case to Family Court or to submit a report, it is wrong to say that the failure to bring an indictment necessarily constitutes a dismissal of the charge. Instead, upon concluding that an indictment will not be issued, the grand jury must dismiss the charge by filing its determination with the court. Importantly, this rule ensures that the grand jury is actually aware that, by its action, the charges then pending against the defendant will be dismissed.
 

 Clearly, like the other official decisions enumerated in CPL 190.60, the dismissal of a charge is for the grand jury to decide as part of its deliberations. Indeed, by requiring the grand jury, acting through the foreperson, to express to the court its decision to dismiss the charge (upon concluding that the evidence is either legally insufficient or does not establish reasonable cause to believe that the accused has committed the crime charged), the Legislature provides that a dismissal cannot occur absent the grand jury’s actual conclusion that a dismissal is warranted. For the court to infer a dismissal of a charge from the grand jury’s inability to make a decision as to what action it should take undermines this clear legislative intent and effectively eliminates one of the enumerated powers of the grand jury.
 

 This case presents a clear example of how an inference of dismissal would subvert the power conferred upon the grand jury. Here, it was having trouble reaching a decision as to what action should be taken. Its members, who were deliberating on a Friday, certainly could not have known that, by merely recognizing their inability to reach a conclusion before the arrival of the weekend and communicating their current state of indecision to the prosecutor, they were effectively dismissing all charges
 
 *552
 
 against defendant. Nor is there any indication that they intended such a result. For a court to infer a dismissal under these circumstances ignores the plain import of the statute— that the grand jury actually be aware that it is dismissing the charges and that it communicate that decision to the court.
 

 Having determined that a dismissal of a pending charge is an affirmative official action or decision for the grand jury to make, we further conclude that pursuant to CPL 190.25 (1), a concurrence of 12 jurors is necessary to effectuate a dismissal. Since there was no such concurrence on any of the enumerated actions, it was not improper for the prosecutor to ask the grand jury to cease its deliberations so that it could hear additional evidence, and she was not required to seek leave from the court before presenting any.
 

 Defendant’s reliance on
 
 People v Montanez
 
 (90 NY2d 690 [1997]) for the conclusion that there was a dismissal here is misplaced. In
 
 Montanez,
 
 after three preliminary votes, 12 grand jurors voted to dismiss the charges. However, when informed of the decision, the prosecutor expressed his displeasure and advised the grand jury that they could reconsider their vote. This prompted the grand jury to request that an additional witness be called, which led to a subsequent vote to indict. Although a grand jury can reconsider a previous vote before it has been formally filed, the grand jury in
 
 Montanez
 
 did not act on its own initiative but acceded to the unsolicited suggestion of the prosecutor. As such, we concluded the new vote was not a sua sponte reconsideration but amounted to an improper re-presentment by the prosecutor, requiring dismissal of the indictment. Here, there was no vote by 12 grand jurors to dismiss. As such, there was no re-presentment or reconsideration implicating the prosecutorial interference concerns underlying our decision in
 
 Montanez.
 

 Nor were the charges in this case withdrawn from one grand jury and submitted to a second, as occurred in
 
 People v Wilkins
 
 (68 NY2d 269 [1986]). There, we were concerned that a prosecutor could attempt to circumvent the restrictions on re-presentment without judicial approval by withdrawing a matter from a grand jury prior to a vote in order to submit it to another grand jury, perhaps more receptive to an indictment “without the consent of either the first Grand Jury or the court which impaneled it”
 
 {id.
 
 at 271). Here, the same grand jury that was initially unable to reach a decision ultimately voted to indict. Thus, the forum shopping concerns discussed in
 
 Wilkins
 
 are simply not present in this case.
 

 
 *553
 
 In sum, we hold that in order for a grand jury to dismiss a charge, 12 of its members must concur in that decision. Accordingly, the order of the Appellate Division reinstating the indictment should be affirmed.
 

 Ciparick, J. (dissenting). Because a prosecutor may not, without judicial leave and absent a sua sponte request from the grand jury, present additional evidence and resubmit a case after the grand jury failed to vote a true bill on the initial presentation, I respectfully dissent, and would reverse the Appellate Division.
 

 This case presents a question of statutory interpretation, specifically whether the agreement of 12 jurors is required for a grand jury to dismiss submitted charges. Section 190.25 (1) provides, in part, that
 

 “[t]he finding of an indictment, a direction to file a prosecutor’s information, a decision to submit a grand jury report and every other
 
 affirmative official action or decision
 
 [by a grand jury] requires the concurrence of at least twelve members thereof’ (CPL 190.25 [1] [emphasis added]).
 

 As dismissal is not one of the individually listed actions, the question of whether a grand jury must by a concurrence of 12 members vote to dismiss turns on whether a dismissal falls into the category of an “affirmative official action or decision.” Since the general phrase follows words of particular meaning, it is to be construed as applying to actions of the same kind as those specifically enumerated
 
 (see People v Shapiro,
 
 50 NY2d 747, 764 [1980];
 
 see also
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 239 [b]).
 

 CPL 190.25 (1) lists three actions—the finding of an indictment, a direction to file a prosecutor’s information and a decision to submit a grand jury report—as being similar to “every other affirmative official action” requiring the concurrence of 12 members. Unlike a dismissal, each of these named acts results in further proceedings against either the defendant or, in the case of a grand jury report, a public servant. A dismissal, on the other hand, ends the proceedings against the defendant altogether. There is no further action to be taken.
 

 The original Practice Commentary to section 190.25 lends support to this distinction
 
 (see
 
 Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 190.25 [1971]). It notes that the part of “subdivision [1] which requires concur
 
 *554
 
 rence of twelve grand jurors for other official action [s]” did not exist in the Code of Criminal Procedure, which preceded the CPL (Denzer,
 
 supra,
 
 CPL 190.25, at 110). “Under the Code, there was a gap in the law because nowhere was it stated, for example, how many grand jurors were required to concur on the calling of a witness, on the granting of immunity to a witness, etc.” (Denzer,
 
 supra,
 
 CPL 190.25, at 110). It was this gap that section 190.25 was intended to fill. Similar to the examples found in the statute, the illustrations of affirmative official action listed in the Commentary advance the investigation of the charges against a defendant, as opposed to a dismissal which terminates all action.
 

 No gap existed in the law concerning the duty of the grand jurors when they failed to garner a vote of 12 to indict. The Code required that an indictment be found by the concurrence of 12 jurors
 
 (see
 
 Code Crim Pro § 268), and provided that the grand jury had to dismiss the charges upon its failure to achieve such a vote. As noted by the majority, section 269 of the Code of Criminal Procedure provided, in pertinent part:
 

 “If twelve grand jurors do not concur in finding an indictment, the depositions (and statement, if any) transmitted to them,
 
 must
 
 be returned to the court, with an indorsement thereon, signed by the foreman, to the effect that the charge is dismissed” (emphasis added).
 

 While the CPL does not include this specific language, the statutory language governing a dismissal continues to be compulsory. The statute provides, in part, that “a grand jury may . . . [djismiss the charge before it, as provided in section 190.75” (CPL 190.60 [4]). Reference to section 190.75 clarifies the circumstances under which a dismissal of submitted charges is mandatory. CPL 190.75 (1) states:
 

 “If upon a charge that a designated person committed a crime, either (a) the evidence before the grand jury is not legally sufficient to establish that such person committed such crime or any other offense, or (b) the grand jury is not satisfied that there is reasonable cause to believe that such person committed such crime or any other offense, it
 
 must
 
 dismiss the charge. In such case, the grand jury must, through its foreman or acting foreman, file its finding of dismissal with the court by which it was impaneled” (emphasis added).
 

 
 *555
 
 In contrast, the finding of an indictment, direction to file a prosecutor’s information and the filing of a grand jury report are permissive acts, implicating the discretion of grand jurors. Section 190.65 (1) (a) of the CPL provides that “a grand jury
 
 may
 
 indict a person for an offense when . . . the evidence before it is legally sufficient to establish that such person committed such offense” (emphasis added). Similarly, the provisions of the statute governing both the grand jury’s direction to file a prosecutor’s information and its decision to submit a grand jury report employ the permissive word “may”
 
 (see
 
 CPL 190.70 [lj;
 
 see also
 
 CPL 190.85).
 

 Thus, as the phrase “affirmative official action” takes its meaning from the acts enumerated in the statute, and other actions of like kind that advance the proceeding, I cannot agree that a dismissal, which terminates it, requires a vote of 12 grand jurors. I am in accord with the dissenting Justices of the Appellate Division that “[t]he CPL directs a grand jury to ascertain by a vote whether there are 12 members who would find an indictment and to report the result of that vote as an indictment if there are 12 or [as] a dismissal if there are not at least 12” (305 AD2d 45, 63 [2003]).
 

 Here, the prosecutor presented all witnesses, including one at the specific request of the grand jury, and instructed the jurors on the law.
 
 *
 
 She formally asked them to commence deliberations on the charges of burglary, attempted robbery, criminal possession of a weapon, menacing, endangering the welfare of a child and harassment. After some deliberations, the foreperson informed the prosecutor that the grand jurors could not “come to a decision either way.” Clearly, having reviewed the evidence first presented, the grand jury in effect found that it was not “legally sufficient to establish that [defendant] committed such crime[s] or any other offense[s]” (CPL 190.75 [1] [a]) or “that there [was no] reasonable cause to believe” that defendant committed the crimes charged or any other offense
 
 (see
 
 CPL 190.75 [1] [b]). Their inability to vote a true bill was equivalent to a rejection of the People’s case as legally insufficient or incredible.
 

 Therefore, under the statute, since the evidence failed, the grand jurors were required to dismiss the charges. If this were
 
 *556
 
 not the case then a deadlocked grand jury might have to continue deliberating indefinitely, which could not have been the intent of the Legislature. That the grand jury did not “file its finding of dismissal with the court” (CPL 190.75 [1]) is of no consequence as filing goes to the finality of the dismissal, not to whether, in fact, there was a dismissal
 
 (see People v Montanez,
 
 90 NY2d 690, 694 [1997]). Moreover, any confusion on the part of the grand jury concerning what action to take upon their failure to reach consensus, can be easily remedied by proper instruction.
 

 Pursuant to CPL 190.75 (3), “[w]hen a charge has been so dismissed, it may not again be submitted to a grand jury unless the court in its discretion authorizes or directs the people to resubmit such charge to the same or another grand jury.” The purpose of section 190.75 is to prevent prosecutorial overreaching, which may malign the grand jury’s integrity and independence. As we previously recognized, “[t]he statute was enacted to curb abuses that resulted from the common-law rule that allowed prosecutors to resubmit charges to successive Grand Juries ad infinitum until one voted an indictment”
 
 (Montanez,
 
 90 NY2d at 693, citing
 
 People v Wilkins,
 
 68 NY2d 269, 273 [1986]).
 

 An exception to the prohibition against resubmission without leave of court exists “when the Grand Jury votes to dismiss a charge and then
 
 sua sponte
 
 decides to reconsider the matter before filing” the dismissal.
 
 (Id.
 
 at 694.) “A truly
 
 sua sponte
 
 reconsideration violates neither the letter nor the spirit of CPL 190.75 . . . [as] there is no possibility of prosecutorial overreaching.”
 
 (Id.)
 
 Only where a grand jury has undertaken “a self-initiated reconsideration” of its prior action may the prosecutor resubmit charges without judicial authorization.
 
 (Id.)
 
 This Court has been clear that a “prosecutor may not unilaterally intervene in the proceedings in any manner which causes
 
 or
 
 contributes to the Grand Jury’s decision to reconsider” a dismissal
 
 (id.
 
 at 695 [emphasis added]).
 

 Here, the People argue that the colloquy between the prosecutor and the grand jury, concerning the failure of the grand jurors to come to a decision “either way,” signaled the grand jury’s openness to the reception of further evidence. The People contend that the foreperson’s communication with the prosecutor was an obvious indicator that the grand jury was in need of assistance. This argument is unavailing as the rule has never been that leave of court is excused where a grand jury appears
 
 *557
 
 to be in need of additional evidence; the grand jury must independently request such reconsideration.
 

 Prudence suggests that we should not broaden the sua sponte exception to include implied requests by a grand jury or anything short of a self-initiated demand for further evidence. Such a rule would conflict with the policies underlying CPL 190.75, leaving great potential for prosecutors to get more than “one bite at the apple” (Montanez, 90 NY2d at 693). The statute provides that a court may grant one resubmission only
 
 (see
 
 CPL 190.75 [3]). Allowing unauthorized resubmissions on the presumption that the grand jury seemed open to new testimony will render ineffectual this statutory limitation.
 

 Moreover, such resubmission disregards the District Attorney’s role as a legal advisor to the grand jurors in their proceedings. As the statutorily designated legal advisor of the grand jury
 
 (see
 
 CPL 190.25 [6]), “the prosecutor performs dual functions: that of public officer and that of advocate”
 
 (People v Huston,
 
 88 NY2d 400, 406 [1996]). These responsibilities include “ ‘the prosecutor’s duty of fair dealing’ ”
 
 (Huston, 88
 
 NY2d at 406 [citation omitted]).
 

 Where a prosecutor has instructed the grand jury on the law and the grand jury, after deliberations, is unable to indict on the completed case before it, fairness suggests that the prosecutor must seek judicial permission before volunteering additional evidence. This is especially true where, as here, the evidence is in the form of a witness, who was known to the prosecutor when the charges were initially submitted, and the grand jury had exercised its power to request a witness during the first presentation. By permitting an unauthorized resubmission on the ground that the grand jury appeared open to further evidence, the majority holding would allow prosecutors to easily circumvent the statutory command of a single presentation and the requirement of leave of court for a second submission
 
 (see
 
 CPL 190.75 [3]). This conclusion undermines the policy of curbing potential prosecutorial excess embodied in CPL 190.75 (3), and should be rejected.
 

 Applying the sua sponte rule, that judicial authorization is not required to resubmit charges where the grand jury has engaged in “a self-initiated reconsideration” of its prior dismissal
 
 (Montanez,
 
 90 NY2d at 694), I conclude that the prosecutor’s introduction of new evidence and resubmission of the charges here violated CPL 190.75 (3). The People concede
 
 *558
 
 that the assistant in this grand jury proceeding has no detailed recollection of her conversation with the foreperson. Neither the assistant nor the foreperson testified at the hearing held by Supreme Court on this matter. The sole record evidence is the colloquy between the prosecutor and the jurors. After stating on the record that the grand jurors could not “come to a decision either way,” the prosecutor instructed the grand jury as follows:
 

 “At this time
 
 I’m asking you to cease deliberations
 
 on this case at this time and I will attempt to bring in additional witnesses and give you additional testimony regarding the case of The People of the State of New York versus Lenworth Aarons and at that time sometime next week
 
 I will ask you to consider these charges again”
 
 (emphasis added).
 

 Nothing in the prosecutor’s statement suggests that the grand jury, having failed to indict, made an independent request to hear additional testimony. On the contrary, in the circumstances presented, the prosecutor’s direction that the grand jury cease deliberations so that she could “attempt to bring in additional witnesses” indicates that she initiated the introduction of further evidence. While the prosecutor requested an on-the-record affirmation from the foreperson as to the grand jury’s failure to vote a true bill, she sought no such affirmation for her resolve to seek more evidence and “ask [the grand jury] to consider these charges again.” The prosecutor decided to take that course on her own initiative, apparently without input from the jurors and certainly without permission from the court.
 

 As it was a Friday, she could have easily dismissed the grand jurors over the weekend and asked them to continue deliberating the following week. Instead, the prosecutor stopped deliberations, presented new evidence and recharged the grand jury on her own accord. It cannot be denied that, at the very least, her interference with the deliberations contributed to the grand jury’s reconsideration of the charges. As a prosecutor cannot unilaterally intervene in the proceedings in any way that causes or contributes to the grand jury’s decision to reconsider what is deemed a dismissal, the assistant’s actions here violated CPL 190.75 (3), prohibiting the resubmission of charges to the grand jury without leave of court.
 

 Accordingly, the order of the Appellate Division should be reversed and the order of Supreme Court dismissing the indictment reinstated.
 

 
 *559
 
 Judges Rosenblatt, Graffeo, Read and R.S. Smith concur with Judge G.B. Smith; Judge Ciparick dissents and votes to reverse in a separate opinion in which Chief Judge Kaye concurs.
 

 Order affirmed.
 

 *
 

 The foreperson read the following:
 

 “The panel is reminded that only those Grand Jurors who have heard all of the evidence presented in this case may vote on the charges and that twelve of those persons must concur in order for an official action to be taken.”