[958 NE2d 111, 934 NYS2d 77]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONDI CREDLE, Appellant.

Argued September 6, 2011; decided October 25, 2011

### POINTS OF COUNSEL

*Center for Appellate Litigation*, New York City (*Jonathan M. Kirshbaum* and *Robert S. Dean* of counsel), for appellant. After a first grand jury presentation resulted in insufficient votes for either an indictment or dismissal, and the jurors voted "no affirmative action," the People were required to seek court authorization under CPL 190.75 (3) to re-present the case to a second grand jury. (*People v Wilkins*, 68 NY2d 269; *People v Montanez*, 90 NY2d 690; *People v Gelman*, 93 NY2d 314; *People v Milton*, 11 Misc 3d 1073[A], 2006 NY Slip Op 50543[U], 40 AD3d 1125; *People v Aarons*, 2 NY3d 547; *People v Pomie*, 11 Misc 3d 798; *People ex rel. Flinn v Barr*, 259 NY 104; *People v Pryor*, 5 AD3d 222; *People v Kirby*, 92 AD2d 848, 61 NY2d 671.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Beth Fisch Cohen, Ellen Stanfield Friedman* and *Susan Axelrod* of counsel), for respondent. The People properly presented the case against defendant to a second grand jury without having obtained permission of the court, after they submitted the case for a vote to the first grand jury and that grand jury was unable to garner enough votes either to indict or to dismiss the charges. (*People v Wilkins*, 68 NY2d 269; *People v Aarons*, 2 NY3d 547; *People v Morrison*, 34 AD3d 398; *People v Ramirez*, 46 AD3d 290; *People v Milton*, 40 AD3d 1125, 9 NY3d 879.)

### OPINION OF THE COURT

Chief Judge LIPPMAN.

Criminal Procedure Law § 190.75 (3) provides that once charges submitted to a grand jury have been dismissed, "[they]

may not again be submitted to a grand jury unless the court in its discretion authorizes or directs the people to resubmit such charge[s] to the same or another grand jury." Although the statute, read literally, requires the People to obtain judicial permission for the resubmission of charges only where the charges have been actually dismissed, it has long been the law that a charge may, under certain circumstances, be deemed "dismissed" within the meaning of CPL 190.75 (3) when a prosecutor prematurely takes the charge from the grand jury (*see People v Wilkins*, 68 NY2d 269 [1986]). This is such a case.

On the morning of April 17, 2006, the prosecution presented drug sale charges against defendant Credle and his codefendant to a grand jury. The grand jury indicted the codefendant but could not muster 12 votes either to indict Credle or dismiss the charges against him. Indeed, it appears that, after taking two inconclusive votes, the jury was given the option, which it took, of voting "no affirmative action" on the counts submitted as to Credle. On the afternoon of the same day, without requesting court permission to do so, the prosecutor resubmitted the charges against Credle to a second grand jury, which returned an indictment.

Credle timely moved to dismiss the indictment, arguing that, under *Wilkins (supra)*, the prosecutor's withdrawal of the fully presented case from the first grand jury amounted to a dismissal and, accordingly, that court permission for re-presentation of the charges had been required. The People responded that, under *People v Aarons* (2 NY3d 547 [2004]), 12 votes were required for a grand jury dismissal, and that since the first grand jury had not mustered 12 votes to dismiss the counts against Credle, there had been no dismissal and no consequently arising obligation on the People's part to seek judicial permission for resubmission of the same counts. The motion court agreed with the People. On the appeal from the ensuing judgment convicting Credle, upon a jury verdict, of criminal sale of a controlled substance in the third degree and criminal sale of a controlled substance at or near school grounds, the Appellate Division, in the course of affirming Credle's convictions, rejected his argument that the withdrawal of the presented counts from the first grand jury constituted a dismissal under *Wilkins*. It held instead, in purported reliance on *Aarons*, that "as a matter of statutory interpretation, a failure

of a grand jury to agree on either an indictment or a dismissal is not a dismissal, and thus does not require leave to re-present" (66 AD3d 572, 573 [1st Dept 2009]). A Judge of this Court granted defendant leave to appeal (15 NY3d 803 [2010]), and we now reverse.

In *Wilkins* (68 NY2d at 274) we held that although "the required concurrence of 12 grand jurors to a dismissal (CPL 190.25 [1]) was not [there] obtained because the question was not put to a vote," a dismissal could, and in that case should, have been inferred from the action, not of the grand jury, for it did not act, but of the prosecutor in withdrawing the case at a time when, although all of the People's witnesses had testified and the only prosecutorial function that remained was to instruct the jury on the law, the grand jury had asked for two additional witnesses (*id.* at 272). We explained that if a prosecutor could by withdrawing a case avoid the requirement of judicial authorization for resubmission, prosecutors would be free to re-present the same charges without limitation until they hit upon an apparently receptive panel. While such practice had been permitted at common law, it was the purpose of CPL 190.75 and its predecessor enactment (Code of Criminal Procedure § 270; *see People ex rel. Flinn v Barr*, 259 NY 104, 107-108 [1932]) to reign it in. The grand jury was, after all, an institution intended to check the accusatory power of the prosecutor's office, and the circumvention of a grand jury by means of unlimited and unsupervised re-presentation of matters that had not actually been dismissed by it, but merely withdrawn unilaterally by the prosecutor, was incompatible with and erosive of the grand jury's essential role. Determined that "the 'beneficent purpose' of [the statute] . . . 'should not be nullified by a narrow technical construction which would[, while apparently following the letter of the law,] destroy its spirit' " (*Wilkins*, 68 NY2d at 275, quoting *Barr*, 259 NY at 109), this Court in *Wilkins* reaffirmed that a prosecutor's withdrawal of a grand jury matter could under certain circumstances be tantamount to a dismissal. In so doing, we allowed that subsequent prosecutorial decisions respecting the re-presentation of withdrawn charges could, notwithstanding the absence of an actual dismissal by vote of the grand jury, be subject to the strictures of CPL 190.75 (3)—namely, that dismissed counts may not be re-presented without judicial leave and that they may be re-presented only once.

We were clear in *Wilkins* that the motive of the prosecutor in taking a case from a grand jury—the presence or absence of

prosecutorial good faith with respect to a grand jury's preroga-
tive to dispose of matters before it—was not determinative of
whether there had been a dismissal triggering the requirement
of judicial authorization for resubmission (68 NY2d at 273).
Rather, the critical question in deciding whether a dismissal had
been effected by a prosecutor's termination of grand jury
deliberations before the grand jury had itself disposed of the
matter in one of the five ways permitted by CPL 190.60,* was
"the extent to which the Grand Jury considered the evidence
and the charge" (*Wilkins*, 68 NY2d at 274). Plainly, under this
formulation, not every withdrawal by a prosecutor will be
treated as a dismissal (*see e.g. People v Gelman*, 93 NY2d 314,
319-320 [1999]).

Here, however, there is no question that the presentation and
consideration of the charges against defendant was, by any mea-
sure, sufficiently far along to render the subsequent withdrawal
of those charges from the first grand jury a dismissal under
*Wilkins*. The People do not dispute this. They argue instead
that once a matter has been put to a grand jury vote it cannot
be dismissed except by a vote of 12 grand jurors—that *Wilkins*
has no application where a matter has been withdrawn
subsequent to an inconclusive vote. It is plain, however, that the
inference of an improper withdrawal preclusive of unauthorized
re-presentment is not diminished and, in fact, may well be
strengthened after the grand jury, by voting inconclusively, has
evinced reluctance to indict. The taking of an inconclusive vote,
then, cannot rationally immunize from judicial scrutiny a
prosecutor's decision to wrest a case from a grand jury. While
*Aarons* does, of course, require 12 votes for a dismissal by ac-
tion of the grand jury, and that condition was not met when the
case was voted by the first grand jury, it does not follow that
there was no dismissal under *Wilkins*.

In *Aarons* the issue was whether the re-presentation of
charges to the same grand jury, after an initial vote in which

---

* The dispositional options available to a grand jury pursuant to CPL 190.60
are to
>  "1. Indict a person for an offense, as provided in section 190.65;
>  "2. Direct the district attorney to file a prosecutor's information
>  with a local criminal court, as provided in section 190.70;
>  "3. Direct the district attorney to file a request for removal to
>  the family court, as provided in section 190.71 of this article.
>  "4. Dismiss the charge before it, as provided in section 190.75;
>  "5. Submit a grand jury report, as provided in section 190.85."

there had not been 12 votes to indict or to dismiss, was permitted without leave of the court pursuant to CPL 190.75 (3). We held that leave was not required because the inconclusive vote was not, as the defendant contended, a dismissal. In ruling that a grand jury could not dismiss an indictment except by a vote of 12, our principal concern was to avoid the possibility of an inadvertent dismissal (*id.* at 551). We were not presented in *Aarons*, as we are here, with the *Wilkins* problem of what significance should attach to a prosecutor's withdrawal of charges and re-presentment to a different grand jury. Indeed, the prosecutor in *Aarons* had not withdrawn the charges, but rather was faulted by the defendant for continuing to present them to the same grand jury until their disposition, notwithstanding an intervening indecisive vote. Here, in contrast to *Aarons*, the issue is not what may be inferred from an action or inaction of the grand jury, but what may be inferred from the action of the prosecutor in unilaterally withdrawing a fully submitted case from the first grand jury and shortly thereafter re-presenting the charges to a second panel. It is doubtless true that the grand jury did not dismiss the charges against defendant with the 12 votes required by *Aarons*. The gravamen of defendant's claim, however, is that the prosecutor effected the dismissal by taking back from the grand jury a matter fully committed to it to be disposed of pursuant to CPL 190.60. This is a claim governed by *Wilkins*, not *Aarons*.

It should be stressed that the relevant question for present purposes is not whether re-presentation should in the end be allowed but who should decide the issue—whether it should be the prosecutor or the court that judges if re-presentation of a fully submitted but undisposed of count is appropriate. *Wilkins* requires that the court make that judgment " 'to carry out the policy which [CPL 190.75 (3)] was enacted to accomplish' " (*Wilkins*, 68 NY2d at 275, quoting *Barr*, 259 NY at 108). Plainly, it would not be consistent with the statutory purpose if the prosecutor were cast as arbiter of whether his or her decision to withdraw a fully committed matter from the grand jury's consideration was compatible with the grand jury's decisional prerogative. The first grand jury to consider the counts against Credle may have been genuinely "hung," but it is also possible that its less than compliant response to the prosecutor's presentation motivated the prosecutor's decision to take the case back. This was quintessentially a situation in which the court, and not the prosecutor, should have decided whether

re-presentation to a second grand jury was appropriate. Of course, as we said in *Wilkins*, if the reasons for the withdrawal are "legitimate" (68 NY2d at 276) and the underlying circumstances do not provide clear indication that the first grand jury's decisional authority was being subverted, leave to re-present should be granted as a matter of course.

Accordingly, the order of the Appellate Division should be reversed and the indictment dismissed with leave to the People to apply for an order permitting resubmission of the charges to another grand jury.

PIGOTT, J. (dissenting). I respectfully dissent because, in my view, the People's perfectly logical withdrawal of this case from a deadlocked grand jury is not the functional equivalent of a dismissal. Therefore, the People were not required to obtain court authorization before re-presentment of the case to another grand jury.

After the People presented their case against defendant to a grand jury, it turned out that the grand jury was unable to garner the 12 votes needed to either indict defendant or dismiss the charges. Despite the People answering additional questions, a rereading of certain testimony and its being instructed a second time, the grand jury remained deadlocked, and eventually returned a vote of "no affirmative action." Since no action was taken, the People were clearly within their right to withdraw the case and present it to a second grand jury. This is what they did, and defendant was subsequently indicted on three drug-related offenses.

Defendant's argument that the grand jury's finding of "no affirmative action" was tantamount to dismissal finds no support in the law; after all, the grand jury did not dismiss the charges. In my view, Supreme Court and the Appellate Division were correct in their reliance on our decision in *People v Aarons* (2 NY3d 547 [2004]), holding that the grand jury's inability to obtain sufficient votes either to indict or dismiss did not constitute a dismissal and, therefore, court approval was unnecessary before the People's re-presentment to another grand jury.

CPL 190.60 permits a grand jury to choose among five possible dispositions: it may indict, direct the district attorney to file a prosecutor's information with a local criminal court, direct the district attorney to file a request for removal to the family court, *dismiss the charge before it, as provided in section 190.75*, or submit a report (*see* CPL 190.60 [1]-[5] [emphasis supplied]).

When a grand jury dismisses a charge pursuant to CPL 190.75, it is required to "file its finding of dismissal with the court by which it was impaneled" (CPL 190.75 [1]), and, in such a circumstance, that charge "may not again be submitted to a grand jury unless the court in its discretion authorizes or directs the people to resubmit such charge to the same or another grand jury" (CPL 190.75 [3]).

The majority's conclusion that the People's withdrawal of their case from the first grand jury was tantamount to a dismissal is simply not found in the law. To be sure, although an "inconclusive vote" is an indication of a grand jury's "reluctance to indict" (majority op at 560), such an "inconclusive vote" is just as equally indicative of a reluctance to dismiss. The majority's holding reduces the number of votes to dismiss to 11 despite the statute requiring 12. Assuming the People secure court authorization to resubmit, should the second proceeding result in an inconclusive result due to any of many factors, including failure to muster a quorum for example, the matter "may not again be submitted to a grand jury" (CPL 190.75 [3]). The target of the presentation will never be indicted for those crimes and the matter will be dismissed. The statute does not contemplate such a draconian consequence.

In my view, our decision in *Aarons* is controlling. There we held that, "in order to dismiss a charge, there must be a formal vote of the grand jury and 12 of its members must concur in that result" (*Aarons*, 2 NY3d at 549; *see* CPL 190.25 [1] [stating that grand jury proceedings are not valid unless there is a quorum of 16 members and "every . . . affirmative official action or decision" has the concurrence of 12 members]). Our rationale in *Aarons* is applicable here, namely, that the language of CPL 190.60 (4) and 190.75 plainly indicates that "the dismissal of a charge is for the grand jury to decide as part of its deliberations," and, therefore, "a *dismissal cannot occur absent the grand jury's actual conclusion that a dismissal is warranted*" (*id.* at 551 [emphasis supplied]). It therefore stands to reason that "a concurrence of 12 jurors is necessary to effectuate a dismissal" (*id.* at 552).

There is no language in CPL 190.60 or 190.75 from which it can be inferred that the Legislature intended that a grand jury's inability to take any action pursuant to CPL 190.60 constitutes a dismissal by default. Indeed, CPL 190.75 (1)'s directive that the grand jury foreman file the grand jury's finding of dismissal signifies that dismissal is a decision that must be made

affirmatively by the grand jury, and cannot be inferred by the grand jury's inability to reach a decision.

Nor is our decision in *People v Wilkins* (68 NY2d 269 [1986]) controlling. There we held that the People's unilateral withdrawal of a case from the first grand jury after presentation of evidence, *but before permitting it to vote*, was equivalent to a dismissal, requiring the People to obtain court authorization before resubmission to the second grand jury (*see id.* at 271). We rejected the People's argument that they had the inherent authority to withdraw matters from the grand jury unilaterally in such circumstances, noting that such authority, if abused, would allow the People to withdraw from grand jury consideration all but the simplest cases, thereby enabling the People to resubmit them "after further preparation or a more compliant Grand Jury is impaneled" (*id.* at 275).

The concerns we expressed in *Wilkins* are absent here. Unlike *Wilkins*, the People submitted their case to a vote. It was not until the grand jury was unable to garner 12 votes to take any action authorized pursuant to CPL 190.60 that the People withdrew the case. There is no suggestion that the People withdrew the case in order to find a more compliant grand jury. It is evident that the first grand jury, having been unable to reach a decision after two attempts, was deadlocked. At that point, there being no directive in the statutory scheme as to what procedure the People should follow, the People did the logical thing and presented the matter to a second grand jury.

Accordingly, I would affirm the order of the Appellate Division.

Judges CIPARICK, GRAFFEO and JONES concur with Chief Judge LIPPMAN; Judge PIGOTT dissents and votes to affirm in a separate opinion in which Judges READ and SMITH concur.

Order reversed, etc.