■ The People of the State of New York, Respondent, v Doran Allen, Appellant. The People of the State of New York, Respondent, v Bevon Burgan, Appellant. [59 NYS3d 14]—

Judgment, Supreme Court, Bronx County (Peter J. Benitez and Efrain Alvarado, JJ., at grand jury-related applications; Ralph Fabrizio, J., at jury trial and sentencing), rendered January 10, 2014, convicting defendant Allen of manslaughter in the first degree, and sentencing him to a term of 25 years, reversed, on the law, and the matter remanded for a new trial. Judgment (same court and Justices), rendered January 17, 2014, convicting defendant Burgan of manslaughter in the first degree and sentencing him to a term of 20 years, unanimously affirmed.

Both verdicts were supported by legally sufficient evidence, and were not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). Initially, we find no basis for disturbing the jury's credibility determinations, and we find that the accomplice corroboration requirement set forth in CPL 60.22 (1) was amply satisfied. The evidence, viewed in totality, supports the conclusion that both defendants intentionally aided the commission of the homicide and shared a community of purpose with the persons who actually shot the victim (see generally Penal Law § 20.00; People v Scott, 25 NY3d 1107 [2015]). In addition to evidence about events leading up to the incident, there was testimony that immediately before the homicide, there was a conversation among the par-

ticipants in which one of the gunmen specifically referred to a plan to "hit" or "kill" the victim and other persons who might be accompanying him. The evidence also demonstrated that Burgan intentionally participated in the crime by remaining nearby with a drawn, loaded pistol, even though others did all the firing, and that Allen intentionally participated by acting as a driver and by pointing out the victim.

The People re-presented, or commenced a re-presentation, of defendants' cases to the grand jury without first obtaining leave from the court, in violation of CPL 190.75 (3) (*see People v Credle*, 17 NY3d 556 [2011]; *People v Wilkins*, 68 NY2d 269, 274-276 [1986]).

As to Burgan, the defect was cured when, although the re-presentation was in progress, the People sought and obtained leave, at a time when the safeguards of CPL 190.75 (3) could still be implemented, and Burgan was not prejudiced (*see Wilkins* at 277).

The circumstances are different as to Allen, since the presence of the unlawful murder charge "loom[ed]" over the trial and influenced the verdict (*see People v Mayo*, 48 NY2d 245, 251 [1979]). We accordingly reverse Allen's conviction and remand for a new trial on the manslaughter count.

The murder charge lacked jurisdictional legitimacy (*see People v McCoy*, 109 AD3d 708 [1st Dept 2013]), violating Allen's constitutional right to be tried for a felony only upon a valid indictment (*see People v Hansen*, 95 NY2d 227, 231 [2000]). While the trial for murder did not violate double jeopardy, it cannot be doubted that the presence of the charge "impugn[ed] the very integrity of the criminal proceeding" (*Mayo*, 48 NY2d at 252). There is nothing to suggest that *Mayo* is limited to double jeopardy cases in the manner suggested by the dissent; indeed, the *Mayo* court recognized that errors of "constitutional magnitude . . . are so fundamental that their commission serves to invalidate the entire trial," and are not susceptible to a traditional spillover analysis, which has its "most convincing application in the area of trial errors concerning the admissibility of evidence" (*id*. at 252).

The dissent maintains that the right to an indictment by a grand jury is not a right "so basic to a fair trial that their infraction can never be treated as harmless error" (internal quotation marks omitted). However, the New York State Constitution holds that no person shall be held to answer for an infamous crime unless upon indictment of the grand jury (NY Const, art I, § 6), and the right to indictment by grand jury has been recognized "as not merely a personal privilege of the de-

fendant but a public fundamental right, which is the basis of jurisdiction to try and punish an individual" (*People v Boston*, 75 NY2d 585, 587 [1990] [internal quotation marks omitted]).

Although defendant Allen was ultimately acquitted of the murder charge, the charge's presence loomed over the trial, and in some way influenced the verdict. Rather than continuing to deliberate concerning Allen's innocence—including evidence suggesting that he was surprised by the shooting, and may have intended that the victim receive no more than a "clipping"—the jury may have concluded that it had sufficiently grappled with the proof by acquitting him of the most serious charge.

In *Mayo*, the Court held that a retrial was necessary even though the unlawful charge had been dismissed prior to the jury retiring to deliberate. Allen's jury was allowed to deliberate on the illegal charge, increasing the likelihood that its presence influenced the verdict and "induced the jury to find him guilty of the less serious offense" (*id*. at 251).

The People's argument that Allen suffered no constitutional violation because he had previously been indicted by a grand jury for murder ignores the jurisdictional nature of the defect and is nothing more than an attempt to circumvent the *Credle* violation.

Even under the dissent's spillover analysis, it cannot be concluded beyond a reasonable doubt that Allen did not suffer prejudice as a result of the constitutionally infirm charge. Defense counsel's strategy was no doubt affected by the need to present an effective defense to the more serious charge.

For the reasons stated in the dissent, we reject defendant Burgan's other arguments. Concur—Acosta, P.J., Manzanet-Daniels, Mazzarelli and Gische, JJ.

Kahn, J., dissents in part in a memorandum as follows: I believe that defendants Doran Allen and Bevon Burgan were properly convicted and sentenced for the reasons that follow. Therefore, I respectfully dissent in part.

For the reasons stated by the majority, I agree that both verdicts were supported by legally sufficient evidence, and were not against the weight of the evidence.

Although the People re-presented, or commenced a re-presentation, of defendants' cases to the grand jury without first obtaining leave from the court, and the circumstances of each of the original presentations made it necessary to obtain such leave (*see* CPL 190.75 [3]; *People v Credle*, 17 NY3d 556 [2011]; *People v Wilkins*, 68 NY2d 269, 274-276 [1986]), I conclude that

neither defendant is entitled to any remedy. I agree with the majority that as to Burgan, the defect was cured when, although the re-presentation was in progress, the People sought and obtained leave, at a time when the safeguards of CPL 190.75 (3) could still be implemented, and Burgan was not prejudiced (see Wilkins at 277).

As to Allen, there was no prejudice because the only effect of the improper re-presentation was the addition by virtue of the second indictment of a count of second-degree murder, of which Allen was acquitted. The procedural posture of People v Mayo (48 NY2d 245 [1979]), cited by the majority for other purposes and discussed below, is distinguishable, as there, the counts of conviction were judicially-added lesser included counts of the subsequently dismissed sole count of the indictment and had never themselves been voted by a grand jury.

Although the People's failure to obtain court permission to re-present the murder charge to a second grand jury was a jurisdictional error, and the murder charge should have been dismissed (see People v McCoy, 109 AD3d 708 [1st Dept 2013]), there is no basis, without resort to speculation, for finding any spillover effect (see People v Doshi, 93 NY2d 499, 505 [1999]). In determining whether the error in submitting the murder count to the jury requires reversal of the count of conviction due to spillover effect, the paramount consideration "is whether there is a 'reasonable possibility' that the jury's decision to convict on the tainted counts influenced its guilty verdict on the remaining counts in a 'meaningful way' " (id., quoting People v Baghai-Kermani, 84 NY2d 525, 532-533 [1994]). The evaluation must be made on a case by case basis, examining the nature of the error and its potential for prejudicial impact on the overall outcome of the case (People v Morales, 20 NY3d 240, 250 [2012]). Our primary focus here must therefore be on the effect which the prosecution's failure to obtain court permission before resubmitting the case to a second grand jury might have had on the trial jury's ability to deliberate fairly on the nontainted counts.

In this case, notably, the evidence introduced in support of the murder count pertained to the same criminal transaction and was otherwise entirely admissible in support of the manslaughter count, suggesting an absence of spillover prejudice (see People v Williams, 292 AD2d 474, 475 [2d Dept 2002]; see also People v Bulgin, 105 AD3d 551, 551 [1st Dept 2013], lv denied 21 NY3d 1002 [2013] [tainted count and other counts "stemmed from the same incident"; no spillover error]; compare People v Morales, 20 NY3d at 250 [introduction of numerous

other alleged assaults, murders and other criminal acts over three year period by other gang members because of presence of tainted terrorism charge held to have prejudiced jury's deliberations]). Additionally, Allen was acquitted of the five remaining counts, regarding the attempted murders of the victims, as well as the three weapons charges, demonstrating that any claims of spillover prejudice are "belied by the fact that the jury actually voted to acquit on five of the remaining counts" (*People v Doshi*, 93 NY2d at 506).

I find no support for Allen's argument that this statutory, procedural violation, albeit one jurisdictional in nature and relating to the state constitutional right to indictment by a grand jury, created a per se taint irrespective of any spillover effect. The position of Allen and the majority, in reliance upon *People v Mayo*, that the error here—a violation of Criminal Procedure Law § 190.75 (3) and *Credle*—warrants preclusion of harmless error analysis and adoption of a finding of per se taint is unsupported in either law or fact. *Mayo* and *Price v Georgia* (398 US 323 [1970]), on which *Mayo* relied, involved violations of the Double Jeopardy Clause, where the defendants were unconstitutionally subjected to a second trial, an "ordeal not to be viewed lightly" (*Price* at 331). Indeed, the Court of Appeals in *Mayo* expressly stated, "[W]e . . . base our holding on the fundamental principles inherent in the double jeopardy clause itself" (*Mayo*, 48 NY2d at 252), *and* explained that "[w]hen a defendant is brought to trial in violation of his rights under the double jeopardy clause of the Fifth Amendment, the very power of the court to try him is implicated" (*id.*), in contrast to violations of other procedural constitutional procedural guarantees (*id.*). The Court further observed that "a trial held in violation of the double jeopardy clause must be deemed to be a nullity having no legal effect . . . [and] [a]ny less exacting standard would contravene the clear purpose of the double jeopardy clause" (*id.* at 252-253). There is no double jeopardy issue present in this case, as defendant concedes.

While observing that "there are some errors of constitutional magnitude that are so fundamental that their commission serves to invalidate the entire trial" (*Mayo*, 48 NY2d at 252), and are not susceptible to harmless error analysis, the *Mayo* Court made clear that not all constitutional errors were to be so treated. It characterized the qualifying errors to be those "constitutional infractions that impugn the very integrity of the criminal proceeding" (*id.*), citing its earlier ruling in *People v Felder* (47 NY2d 287 [1979]), involving the right to counsel, and applying its reasoning to double jeopardy violations. In

*Felder*, the Court of Appeals identified such errors, in addition to the denial of the right to counsel, as the denial of the right to a public trial, prosecutorial misconduct, and judicial misconduct, finding them to be "so basic to a fair trial that their infraction can never be treated as harmless error" (*id.* at 296 [internal quotation marks omitted]).

Neither defendant nor the majority advances any authority for including the constitutional right to indictment by a grand jury among these rights. In any case, all of the charges presented to the jury here were included in indictments voted by grand juries. The error in this case was not a constitutional violation, but a statutory one, which did not impugn the integrity of the proceeding. There is, accordingly, no basis for extending the reach of the per se taint rule of *Mayo* and *Felder* to the present circumstances.

Defendants' ineffective assistance of counsel claims are unreviewable on direct appeal because they involve matters not reflected in, or fully explained by, the record, such as matters of strategy (*see People v Rivera*, 71 NY2d 705, 709 [1988]; *People v Love*, 57 NY2d 998 [1982]). Accordingly, since defendants have not made CPL 440.10 motions, the merits of the ineffectiveness claims may not be addressed on appeal. In the alternative, to the extent the existing record permits review, I find that each defendant received effective assistance under the state and federal standards (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *Strickland v Washington*, 466 US 668 [1984]). Defendants have not shown that their counsel's alleged deficiencies fell below an objective standard of reasonableness, or that, viewed individually or collectively, they deprived the respective defendants of a fair trial or affected the outcome of the case. Burgan's claims that the People violated their disclosure obligations under *Brady v Maryland* (373 US 83 [1963]), or presented allegedly false testimony, are based on factual assertions outside the record, and are thus unreviewable on direct appeal (*see e.g. People v Williams*, 43 AD3d 729 [1st Dept 2007], *lv denied* 9 NY3d 1010 [2007]).

The instances of alleged prosecutorial misconduct in the opening and closing statements, cited by Burgan, do not warrant reversal, and I reject Burgan's claim that his sentence was excessive.

Accordingly, I would affirm the judgments of conviction of defendants Allen and Burgan.