People v Allen (2018 NY Slip Op 08537)

People v Allen

2018 NY Slip Op 08537 [32 NY3d 611]

December 13, 2018

Fahey, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, March 20, 2019

[*1]

The People of the State of New York, Appellant,
v
Doran Allen, Respondent.

Argued November 14, 2018; decided December 13, 2018

People v Allen, 152 AD3d 401, reversed.

{**32 NY3d at 613} OPINION OF THE COURT

Fahey, J.

Criminal Procedure Law § 190.75 (3) provides that if a grand jury has dismissed a charge presented to it, that charge
"may not again be submitted to a grand jury unless the court in its discretion authorizes or directs the people to resubmit such charge to the same or another grand jury. If in such case the charge is again dismissed, it may not again be submitted to a grand jury."
At common law, it was permissible for a prosecutor to resubmit the same charges against a defendant to successive grand juries (see People v Credle, 17 NY3d 556, 559 [2011]; People v Wilkins, 68 NY2d 269, 273 [1986]). By enacting Code of Criminal{**32 NY3d at 614}Procedure § 270, the predecessor statute to CPL 190.75, the legislature intended to restrict that practice (see Wilkins, 68 NY2d at 273, citing People ex rel. Flinn v Barr, 259 NY 104, 107-108 [1932]).
The People's failure to obtain court permission to resubmit a murder count to a new grand jury after the first grand jury deadlocked on that charge violated Criminal Procedure Law § 190.75 (3), and Supreme Court erred in [*2]denying defendant's pretrial motion to dismiss the murder count in the second indictment on that ground. Under the circumstances of this case, however, that error does not require reversal of defendant's conviction on a jointly tried count that was contained in the separate, valid first indictment.
I.
In 2008, defendant acted as the getaway driver during a shooting that resulted in the death of one of the victims. Two other victims survived. Shortly thereafter, defendant and two codefendants were indicted. In this first indictment, defendant was charged under an acting in concert theory with, among other crimes, manslaughter in the first degree with respect to the victim who died and two counts of attempted murder as to the two surviving victims. The first grand jury deadlocked, however, on a charge of murder in the second degree as against defendant. There is no dispute on this appeal about the validity of the charges against defendant contained within this first indictment, including the attempted murder counts.
The People took no official action with respect to the first grand jury's deadlock on the murder count against defendant. In 2011, however, the People filed a second indictment containing charges against defendant and a third codefendant, Bevon Burgan. This second indictment contained a count of murder in the second degree against defendant. Although the People obtained permission to resubmit the matter to a new grand jury with respect to codefendant Burgan (albeit belatedly), they concede that they failed to obtain such permission with respect to defendant as required by Criminal Procedure Law § 190.75 (3).
Defendant moved to dismiss the murder count contained in the second indictment as obtained in violation of CPL 190.75 (3). Supreme Court denied that motion. The court held that, although the People were required to obtain permission to resubmit the murder count to a new grand jury and they failed{**32 NY3d at 615} to do so, the error was not "fatal" and did not require dismissal of the murder count. The court also noted that there was no evidence that the People had acted in bad faith.
Defendant proceeded to trial on both indictments, and he was tried jointly with Burgan and another codefendant. After trial, the jury acquitted defendant of the murder count contained in the second indictment, convicted defendant of the manslaughter count contained in the first indictment, and acquitted defendant of all other charges contained in the first indictment.
On appeal, the Appellate Division reversed the judgment and granted defendant a new trial on the manslaughter count. Relying primarily on our decision in People v Mayo (48 NY2d 245 [1979]), the Appellate Division concluded that the improper presence of the murder charge "loomed over the trial, and in some way influenced the verdict" (152 AD3d 401, 403 [1st Dept 2017]). One Justice dissented, concluding that spillover analysis rather than Mayo applied, and that under a spillover analysis, defendant was not entitled to a new trial on the manslaughter count.[FN1]
The dissenting Justice granted the People leave to appeal to this Court (2017 NY Slip Op 96789[U] [2017]). We now reverse.
II.
In People v Wilkins (68 NY2d 269, 271-272, 276-277 [1986]), we held that a prosecutor's unilateral withdrawal of a case from a grand jury after presentation of the evidence was tantamount to a dismissal, and that the prosecutor must seek court permission pursuant to CPL 190.75 (3) to submit the case to a new grand jury. In [*3]People v Credle (17 NY3d 556, 560-562 [2011]), we applied that holding to a circumstance where the grand jury rendered an inconclusive vote. We held that if a grand jury deadlocks on a case submitted to it after presentation of the evidence and consideration of the charges, the prosecutor may not resubmit the case to a different grand jury without first obtaining the court permission mandated by CPL 190.75 (3). Notwithstanding the failure of the grand jury's{**32 NY3d at 616} vote to dispose of the case in a manner permitted by CPL 190.60, the termination by the prosecutor of the grand jury deliberations on the charges was effectively a dismissal (see id.).
On this appeal, the People first contend that Supreme Court did not err in denying defendant's motion to dismiss the murder count in the second indictment because, among other reasons, defendant was not prejudiced by the People's failure to comply with CPL 190.75 (3).[FN2] In other words, the People assert that their failure to comply with the statute does not require dismissal of the count of the indictment obtained after the statutory violation. This contention is irreconcilable with our decisions in Credle and Wilkins, which warrant dismissal of the murder count procured here after the People failed to adhere to CPL 190.75 (3).
In Credle, we reiterated that the good faith of the prosecutor is not dispositive (see id. at 559-560, citing Wilkins, 68 NY2d at 273). "Rather, the critical question in deciding whether a dismissal had been effected by a prosecutor's termination of grand jury deliberations before the grand jury had itself disposed of the matter in one of the five ways permitted by CPL 190.60, was 'the extent to which the Grand Jury considered the evidence and the charge' " (id. at 560, quoting Wilkins, 68 NY2d at 274). The Credle Court further observed that "by voting inconclusively," the grand jury "ha[d] evinced reluctance to indict," and that it was possible that the grand jury's "less than compliant response to the prosecutor's presentation motivated the prosecutor's decision to take the case back" (Credle, 17 NY3d at 560-561). In short, "[t]his was quintessentially a situation in which the court, and not the prosecutor, should have decided whether re-presentation to a second grand jury was appropriate" (id. at 561-562).
The Credle Court dismissed the indictment due to the People's failure to comply with CPL 190.75 (3). This is consistent with our analysis in Wilkins, where we concluded that prejudice to the defendant may have resulted within the meaning of CPL 210.35 (5)[FN3] because, based on certain deficiencies in the evidence presented, the first grand jury might have{**32 NY3d at 617} dismissed the charges if given the opportunity, and because "had leave been sought to resubmit the charges, it may have been denied" (Wilkins, 68 NY2d at 276-277). The Court held that it was "an abuse of discretion as a matter of law" to deny the defendant's motion to dismiss the indictment, "notwithstanding the permissive language in CPL 210.20 (1) (c)" (id. at 277).[FN4]
Similarly, here there is no dispute that the first grand jury had fully considered all the evidence against defendant relevant to the murder count before it deadlocked on that charge (cf. People v Davis, 17 NY3d 633, 638-639 [2011]). The People properly concede that, pursuant to our holding in Credle, they were required to obtain court [*4]permission to resubmit the murder charge to a second grand jury but failed to do so. As in Wilkins, the first grand jury here may have ultimately dismissed the murder count against defendant, and leave to resubmit may not have been granted (see Wilkins, 68 NY2d at 276-277). Consequently, there was at least a "mere possibility of prejudice" to defendant from the People's failure to comply with CPL 190.75 (3) (Wilkins, 68 NY2d at 277 n 7, citing CPL 210.35 [5]). The court therefore erred in denying defendant's motion to dismiss the murder count against defendant from the second indictment.
Wilkins and Credle do not entirely resolve this appeal. In those cases, all counts of the indictment were obtained in violation of CPL 190.75 (3) (see Credle, 17 NY3d at 558; Wilkins, 68 NY2d at 271-272). For that reason, this Court dismissed the entire indictment against each defendant. Here, by contrast, only the murder count in the second indictment was obtained after a CPL 190.75 (3) violation. All the counts charged against defendant in the first indictment, including the count of manslaughter in the first degree, undisputedly suffered from no such infirmity.
The remaining question is whether, although defendant was acquitted of murder, the improper presence of the murder count during trial requires that defendant receive a new trial on the manslaughter count of which he was convicted. The Appellate{**32 NY3d at 618} Division applied our decision in Mayo to analyze that issue, but we conclude that the principles articulated in that decision are inapplicable in this context.[FN5] III.
In Mayo, the defendant was charged in a single-count indictment with the crime of robbery in the first degree. During the first trial, the court concluded at the close of the evidence that the People had failed to prove the defendant's guilt of robbery in the first degree by legally sufficient evidence (see Mayo, 48 NY2d at 248). The court allowed the jury to consider the lesser included offenses of robbery in the second and third degrees, but the jury deadlocked on those offenses (see id.). The court failed to dismiss the indictment, and instead of obtaining a new indictment charging the defendant with those lesser included offenses, the People brought the defendant to trial a second time under the original indictment containing the count of robbery in the first degree (see id.). The second jury found the defendant guilty of the lesser included offense of robbery in the second degree, and the Appellate Division applied a harmless error analysis to uphold the defendant's conviction of that offense (see id. at 248-249).
We held that the defendant's constitutional double jeopardy rights had been violated by the retrial on the original indictment (see id. at 249-250). The Court further concluded that harmless error analysis was "wholly inappropriate in this context" (id. at 249). Stating that "the evil to which the double jeopardy clause is addressed occurs when a defendant is brought into court to defend against a criminal charge for the second time and is again subjected to the attendant expense, personal anxiety and social opprobrium," we determined that "[t]he effect of such a burden simply cannot be rectified by the defendant's subsequent exoneration" (id. at 250). The Court explained:{**32 NY3d at 619}
"[W]e eschew the 'harmless error' approach adopted by the Appellate Division and instead base our holding on the fundamental principles inherent in the double jeopardy clause itself. It has been observed that '[t]he guarantee against double jeopardy is [*5]significantly different from [other] procedural guarantees . . . While this guarantee, like the others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of the trial' . . . . When a defendant is brought to trial in violation of his [or her] rights under the double jeopardy clause of the Fifth Amendment, the very power of the court to try [the defendant] is implicated . . . . Thus, while a double jeopardy claim may be waivable under certain limited circumstances . . . , it cannot be gainsaid that, absent such a waiver, a trial held in violation of the double jeopardy clause must be deemed to be a nullity having no legal effect . . . . Any less exacting standard would contravene the clear purpose of the double jeopardy clause, to deprive the State of the power to subject a citizen to the risk of trial after [the citizen] has been exonerated of the charges" (Mayo, 48 NY2d at 252-253).
The analysis of the Mayo Court was based "on the fundamental principles inherent in the double jeopardy clause itself" (id. at 252). There, the second trial was a "nullity" that should have never occurred because bringing the defendant to trial a second time on an indictment that should have been dismissed violated constitutional double jeopardy protections (id. at 252-253). In Mayo, there was no existing valid indictment upon which the defendant's second trial could have lawfully occurred, inasmuch as the dismissal of the single count for double jeopardy reasons left "nothing remaining to support further criminal prosecution . . . under that accusatory instrument" (People v Gonzalez, 61 NY2d 633, 635 [1983]). Harmless error analysis was inappropriate because the second trial should never have proceeded on that indictment, and the conviction obtained at the second trial was not based upon a valid indictment.
Here, by contrast, the first indictment was a valid accusatory instrument. For that reason, defendant's entire trial was not a "nullity having no legal effect" (Mayo, 48 NY2d at 252-253). All {**32 NY3d at 620}of the charges against defendant contained within the first indictment, on which he was also tried, were valid and were not obtained in violation of CPL 190.75 (3). We have already concluded that the murder count in the second indictment should have been dismissed before trial, but the trial was a valid proceeding with respect to all counts contained in the first indictment. By contrast, the Mayo Court concluded that the entire second trial was a nullity from its inception based on constitutional double jeopardy principles that are inapplicable here and because the conviction was based upon a defective indictment that should have been dismissed. Consequently, Mayo does not provide an apt framework to consider whether defendant should receive a new trial on his conviction of manslaughter in the first degree.
Instead, the Appellate Division should have applied spillover analysis, as the dissenting Justice concluded. Spillover analysis is appropriate for assessing " '[w]hether an error in the proceedings relating to one count requires reversal of convictions on other jointly tried counts' " (People v Morales, 20 NY3d 240, 250 [2012], quoting People v Baghai-Kermani, 84 NY2d 525, 532 [1994]).
IV.
Spillover analysis is highly case-specific (see Morales, 20 NY3d at 250; Baghai-Kermani, 84 NY2d at 532; see also People v Daly, 14 NY3d 848, 849 [2010]; People v Doshi, 93 NY2d 499, 504-505 [1999]). It requires the Court to "evaluate the individual facts of the case, the nature of the error and its potential for prejudicial impact on the over-all outcome" (Morales, 20 NY3d at 250 [internal quotation marks omitted]). "Reversal is required if 'there is a reasonable possibility that the jury's decision to convict on the tainted counts influenced its guilty verdict on the remaining counts in a meaningful way' " (id., quoting Doshi, 93 NY2d at 505). Here, the jury acquitted defendant of the "tainted" count of murder in the second degree. Spillover analysis is nevertheless fitting for determining whether the presence of the murder count during trial requires that defendant receive a new trial on the "non-tainted" manslaughter count.
Where the error in question has been a Brady or Rosario violation, we have observed that when the witness testimony in question pertained to only certain factually distinct counts, and the witness presented no testimony with respect to the{**32 NY3d at 621} remaining counts, the defendant is not entitled to a new trial on the remaining counts that were not [*6]impacted by the violation (see Daly, 14 NY3d at 849-850; Baghai-Kermani, 84 NY2d at 532-533; see also Doshi, 93 NY2d at 505-506 [concluding that there was no spillover prejudice where an erroneous jury charge on "tainted" counts did not impact other, "readily distinguishable" counts]). By contrast, the presence of a count during trial that should have been dismissed may lead to the presentation of evidence on the tainted count that was inadmissible with respect to the non-tainted counts (see Morales, 20 NY3d at 250 [concluding that the presence of a terrorism count allowed the People to introduce otherwise inadmissible and prejudicial evidence and granting a new trial on the non-tainted underlying offenses]).
Under the particular circumstances of this case, we conclude that defendant is not entitled to a new trial on the manslaughter count. The People assert that all of the evidence admitted to prove defendant's guilt of murder in the second degree was also admissible to prove his guilt of manslaughter in the first degree, and defendant does not contend otherwise. Unlike Morales, the presence of the tainted murder count here did not result in the admission of any prejudicial evidence that the jury would have been unable to consider if the murder count had been dismissed (cf. Morales, 20 NY3d at 250).
Defendant argues that his counsel was required to alter his trial strategy significantly due to the presence of the murder count, but this contention is not supported by a reasonable view of the record. Defense counsel's primary strategy during trial was to argue that even if there was an agreement among the codefendants to harm the victim who died, there was no evidence that defendant was aware of any such agreement, or that defendant himself had any intent to harm that victim. This strategy was equally applicable to the manslaughter count. Furthermore, any argument by counsel that the codefendants intended to harm, but not kill, and that defendant therefore could not be an accomplice to any crime that required intent to kill, was also a defense against the two attempted murder counts charged in the first indictment with respect to the two shooting victims who survived. Inasmuch as these attempted murder counts were contained within the first indictment, defense counsel would have had to address them during the trial even if the murder count in the second indictment had been dismissed.{**32 NY3d at 622}
Defendant's alternative contention that the jury may have reached a compromise verdict is based on speculation, and the jury's acquittal of defendant on the other, lesser offenses contained within the first indictment suggests that the jury was able to independently evaluate each count before it (see Doshi, 93 NY2d at 506). In addition, the trial court instructed the jurors to consider the evidence as it applied to each defendant and each count separately.
For these reasons, we conclude that in this case there is no reasonable possibility that the presence of the murder count during trial influenced the jury's decision to convict defendant on the manslaughter count in any meaningful way (see Morales, 20 NY3d at 250). Defendant is not entitled to a new trial on the manslaughter count (see generally People v Brown, 83 NY2d 791, 793-794 [1994]).
Accordingly, the order of the Appellate Division should be reversed and the case remitted to the Appellate Division for determination of the facts and issues raised but not determined on the appeal to that Court (CPL 470.25 [2] [d]; 470.40 [2] [b]).

Rivera, J. (concurring). I agree with the majority's result because there 
is no reasonable possibility that the jury's verdict on the remaining charges 
was influenced in a meaningful way by the submission to the jury of the tainted 
murder count (majority op at 621-622; People v Morales, 20 NY3d 240, 250 [2012]; People v Doshi, 93 NY2d 499, 504-505 [1999]; People v Baghai-Kermani, 84 NY2d 525, 532 [1994]). I part with the majority's analysis only to the extent it applies a prejudice analysis to the erroneously obtained murder count indictment. Instead, the People's failure to obtain the court's permission for resubmission of the dismissed murder charge to the grand jury, in accordance with Criminal Procedure Law § 190.75 (3), rendered the indictment on that charge jurisdictionally defective and subject to dismissal (CPL 210.35, 210.20 [1]; People v Wilkins, 68 NY2d 269, 276-277 [1986]).
"The grand jury [is], after all, an institution intended to check the accusatory power of the prosecutor's office," and it is "incompatible with and erosive of the grand jury's essential role" to allow the People's "unlimited and unsupervised re-presentation of matters" dismissed by the grand jury or withdrawn by the prosecutor (People v Credle, 17 NY3d 556, 559 [2011]). An indictment obtained without a court order in violation of CPL 190.75 (3) must be dismissed, as this constitutes "a failure {**32 NY3d at 623}to conform to the requirements of article 190 'to such degree that the integrity thereof is impaired' " (Wilkins, 68 NY2d at 276). Contrary to the majority's assertion (majority op at 
617), dismissal of such indictment is not subject to a prejudice analysis because "the sole reason for invoking CPL 210.35 (5) . . . is the failure of the District Attorney to seek leave of the court for resubmission—an act which is required by article 190" (Wilkins, 68 NY2d at 278-279 [Hancock, Jr., J., dissenting]). When the People fail to comply with the requirements of CPL 190.75 (3) "the relevant question . . . is not whether re-presentation should in the end be allowed but who should decide the issue—whether it should be the prosecutor or the court that judges if re-presentation of a fully submitted but undisposed of count is appropriate" (Credle, 17 NY3d at 561 [dismissing the indictment, without a prejudice analysis, upon the People's failure to secure a court order for re-submission of charges as required by CPL 190.75 (3)]).
Chief Judge DiFiore and Judges Stein, Garcia, Wilson and Feinman concur; Judge Rivera concurs in result in an opinion.
Order reversed and case remitted to the Appellate Division, First Department, for determination of the facts and issues raised but not determined on the appeal to that Court (CPL 470.25 [2] [d]; 470.40 [2] [b]).

Footnotes

Footnote 1:The Appellate Division considered codefendant Bevon Burgan's appeal together with defendant's appeal. The Court affirmed the judgment convicting Burgan of manslaughter in the first degree, distinguishing Burgan's case on the ground that the People had obtained court permission to resubmit the charges against Burgan "at a time when the safeguards of CPL 190.75 (3) could still be implemented" (152 AD3d at 402).

Footnote 2:The People's alternative argument that defendant waived any objection to the second grand jury proceeding is without merit.

Footnote 3:CPL 210.35 (5) provides that "[a] grand jury proceeding is defective within the meaning of [CPL 210.20 (1) (c)] when . . . [t]he proceeding otherwise fails to conform to the requirements of [CPL article 190] to such degree that the integrity thereof is impaired and prejudice to the defendant may result."

Footnote 4:CPL 210.20 (1) (c) states that "[a]fter arraignment upon an indictment, the superior court may, upon motion of the defendant, dismiss such indictment or any count thereof upon the ground that . . . [t]he grand jury proceeding was defective, within the meaning of section 210.35."

Footnote 5:The Appellate Division also concluded that the People's failure to obtain the permission required by CPL 190.75 (3) violated defendant's "constitutional right to be tried for a felony only upon a valid indictment" (152 AD3d at 402). Defendant, however, did not make any constitutional claim before the motion court. His motion to dismiss the murder count in the second indictment was based solely on statutory grounds. To the extent defendant contends on this appeal that the CPL 190.75 (3) violation implicated his constitutional rights, we do not consider that argument.