People v Dean (2026 NY Slip Op 01218)

People v Dean

2026 NY Slip Op 01218

Decided on March 4, 2026

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 4, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LARA J. GENOVESI, J.P.
LINDA CHRISTOPHER
JANICE A. TAYLOR
DONNA-MARIE E. GOLIA, JJ.

2024-04093
 (Ind. No. 70428/23)

[*1]The People of the State of New York, respondent,
vLameek Dean, appellant.

Martin Goldberg, Franklin Square, NY, for appellant.
Anne T. Donnelly, District Attorney, Mineola, NY (David L. Glovin and Cristin N. Connell of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Terence P. Murphy, J.), rendered May 1, 2024, convicting him of grand larceny in the fourth degree (five counts) and petit larceny (two counts), upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Nassau County, for a new trial.
In a single indictment, the defendant was charged with 2 counts of petit larceny, 11 counts of grand larceny in the fourth degree, and 1 count of grand larceny in the third degree, arising from an alleged theft at a photography studio in March 2022 and an alleged theft at a dry cleaners in August 2022. After a jury trial, the defendant was acquitted of all counts pertaining to the photography studio incident, but was convicted of five counts of grand larceny in the fourth degree and two counts of petit larceny pertaining to the dry cleaners incident.
The Supreme Court providently exercised its discretion in denying the defendant's motion pursuant to CPL 200.20(3) for separate trials on the respective incidents charged in the indictment. Here, the defendant failed to demonstrate that there was substantially more evidence of one incident as compared to the other (see People v Benshitrit, 185 AD3d 1046, 1047; People v Reyes, 60 AD3d 873, 874; People v Martin, 141 AD2d 854, 854). Furthermore, the proof of each crime was separately presented, uncomplicated, and easily segregable in the minds of the jurors (see People v Reyes, 60 AD3d at 874; People v Brewer, 269 AD2d 538, 538; People v Brennin, 184 AD2d 715, 716). The court also instructed the jury to consider the evidence presented in each incident separately (see People v Reyes, 60 AD3d at 874; People v Brewer, 269 AD2d at 538; People v Brennin, 184 AD2d at 716). Moreover, the fact that the jury acquitted the defendant of all counts pertaining to the photography studio incident demonstrates that the jury was able to segregate the evidence as to each incident (see People v Davis, 141 AD3d 542, 543; People v Jones, 244 AD2d 359, 360; People v Berta, 213 AD2d 659, 660). The defendant's contention that his acquittal on those counts may have been a compromise verdict is based on speculation (see People v Allen, 32 NY3d 611, 622; People v Ogilvie, 197 AD3d 730, 731). Furthermore, the defendant's contention that the cases should have been severed because doing so would have eliminated the need for a police sergeant to testify is unpreserved for appellate review (see CPL 470.05[2]; People v Davis, [*2]141 AD3d at 543; People v Berta, 213 AD2d at 660). In any event, this contention is without merit (see People v Franzese, 154 AD3d 706, 707).
Furthermore, the Supreme Court properly permitted the police sergeant to testify in order to complete the narrative of events leading to the defendant's arrest (see People v Hall, 239 AD3d 770, 772; People v Williams, 238 AD3d 1076, 1078). Nonetheless, the court improvidently exercised its discretion in permitting the sergeant's testimony for the purpose of identification of the defendant as the individual depicted in stills from surveillance footage from the dry cleaners (see People v Williams, 238 AD3d at 1077). "Identification testimony from a lay non-eyewitness may only be admitted where (1) 'the witness has had sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful,' and (2) 'the jury needs the witness's assistance'" (People v Cannon, 239 AD3d 986, 987, quoting People v Mosley, 41 NY3d 640, 648-649). Based on the record on appeal, the sergeant's familiarity with the defendant was so limited that there was no basis for the court to conclude that the testimony would be of assistance to the jury in determining if the defendant was the individual depicted in the surveillance video (see People v Mosley, 41 NY3d at 650-651; People v Williams, 238 AD3d at 1077). However, the error was harmless, as there was overwhelming evidence of the defendant's guilt, and no significant probability that the error contributed to his conviction (see People v Lowe, 237 AD3d 1225, 1227; see also People v Robbs, 233 AD3d 1456, 1458).
Nevertheless, reversal and a new trial are required based on the Supreme Court's error in discharging a sworn juror for incapacity, prior to providing defense counsel with meaningful notice of the content of a jury note and an opportunity to be heard.
One morning, during the People's direct case, there was a delay in the start of trial. Defense counsel timely informed court staff, at approximately 6:00 a.m, that, due to extreme weather, school opening was delayed, creating an unavoidable child care issue. Defense counsel informed court staff that, as a result, she would be unable to appear in court at the previously scheduled 9:30 a.m. start time, but would be arriving later that morning. During this delay, at approximately 9:30 a.m., the Supreme Court received a note from a juror, informing the court that the juror learned, as she arrived to court that morning, that her "good friend's son passed away last night." The court, prior to defense counsel's arrival but in the presence of the People, read the note into the record and questioned the juror on the record. There is no indication in the record that any attempt was made, by the court or the People, to reach defense counsel prior to reading the note into the record and conducting this inquiry. The court acknowledged, on the record, the absence of the defendant and defense counsel, but stated that "because of the emergent nature, [it] felt that it was necessary to deal with the issue as soon as possible." The court then briefly questioned the juror, asking, "So I can presume then, because of the traumatic nature of that news and the fact that you are going to have to inform your children of the sudden loss of a friend and neighbor, that you are in no shape to continue your responsibilities as a juror in this case." The juror, responded, inter alia, "I don't think that I would be able to give the case the attention that it deserves. It's just, honestly, my brain is going to be somewhere else." Without further questioning, after providing the People with an opportunity to be heard, the court discharged the juror.
When defense counsel arrived, the case was recalled at approximately 10:52 a.m. and the Supreme Court gave defense counsel an opportunity to read the juror's note and confer with the defendant. The court summarized the events that took place, informing defense counsel, for the first time, that the juror had already been discharged. The court explained its decision as follows: "It might be an understatement to say that Juror Number 5 was beside herself with regard to the tragic news of her friend's son dying . . . . It was clear to this Court that she was in such a state that she could not possibly continue to act as a juror in this particular case . . . . The Court discharged the juror at that point, notwithstanding [that] the defense didn't have an opportunity to be heard."
After further conferencing with the defendant, defense counsel objected to the Supreme Court's failure to afford the defendant an opportunity to be heard, stating that the defense was deprived of the opportunity to observe the juror's demeanor and to observe the state of the juror, and asked the court to declare a mistrial. Under the circumstances presented, we agree that the [*3]court's actions constitute reversible error.
CPL 270.35(2)(a) provides that "[i]n determining pursuant to this section whether a juror is unable to continue serving by reason of illness or other incapacity, or is for any other reason unavailable for continued service, the court shall make a reasonably thorough inquiry concerning such illness, incapacity or unavailability, and shall attempt to ascertain when such juror will be appearing in court." In applying this statute, the Court of Appeals has "noted that it safeguards two constitutional rights: 'the right to be tried by the jury in whose selection the defendant himself [or herself] has participated, and the right to an impartial jury'" (People v Fisher, 41 NY3d 495, 500, quoting People v Rodriguez, 71 NY2d 214, 218; see NY Const, art I, §§ 2, 6; US Const 6th, 14th Amends).
CPL 270.35 was amended in 1996 to provide guidance to courts when called upon to determine whether a seated juror is unable to continue serving (see Bill Jacket, L 1996, ch 630). While the Legislature sought, through this amendment, to eliminate any ambiguity and create a bright-line rule that required a "reasonably thorough inquiry" prior to a determination of a juror's unavailability and discharge (CPL 270.35[2][a]; see People v Jeanty, 94 NY2d 507, 511; People v Page, 72 NY2d 69, 73), the Legislature also included the additional requirement that defense counsel and the People shall be given an opportunity to be heard prior to the discharge of a juror (see CPL 270.35[2][b]; see generally Letter from NY Assembly, Bill Jacket, L 1996, ch 630 at 5). "[E]ach case must be evaluated on its unique facts to determine whether a particular juror must be disqualified under CPL 270.35" (People v Buford, 69 NY2d 290, 299).
"'[T]he trial court must question each allegedly unqualified juror individually in camera in the presence of the attorneys and defendant, conducting a probing and tactful inquiry into the unique facts of each case, including a careful consideration of the juror's answers and demeanor'" (People v Cowan, 243 AD3d 674, 675, quoting People v Lau, 148 AD3d 932, 933). "While the trial court is given great latitude, 'the court may not speculate as to possible partiality based on equivocal responses but must be convinced that it is obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict'" (id. [internal quotation marks omitted], quoting People v Whyte, 282 AD2d 629, 630; see People v Buford, 69 NY2d at 298).
It is undisputed that the Supreme Court failed to adhere to the requirements of CPL 270.35. As a matter of procedure, the court, at a minimum, should have informed all parties of the substance of the inquiry and provided each side with an opportunity to be heard before making its determination to discharge the sworn juror. The court both conducted the inquiry and discharged the juror in the presence of the People and in the absence of defense counsel.
Although defense counsel was apprised with the actual specific contents of the jury note upon her arrival (see People v O'Rama, 78 NY2d 270, 278), the Supreme Court's procedural errors here were inherently prejudicial, as they deprived the defendant of an opportunity to be heard before giving meaningful notice of the contents of the note, conducting the inquiry, and discharging the juror as incapacitated (cf. People v Nealon, 26 NY3d 152, 160; People v Garay, 25 NY3d 62, 68; People v Owens, 136 AD3d 841, 843). Accordingly, the court erred in denying the defendant's motion for a mistrial. We reverse the judgment and order a new trial.
GENOVESI, J.P., CHRISTOPHER, TAYLOR and GOLIA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court