People v Shaver
2026 NY Slip Op 02895
May 7, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,
v
Nathan Shaver, Appellant.

Decided and Entered:May 7, 2026
CR-25-0404
Calendar Date: March 24, 2026
Before: Clark, J.P., Aarons, Ceresia, Mcshan And Corcoran, JJ.

D.J. & J.A. Cirando, PLLC, Syracuse (John A. Cirando of counsel), for appellant.
Gary M. Pasqua, District Attorney, Canton, for respondent.

[*1]
Corcoran, J.
Appeal from a judgment of the County Court of St. Lawrence County (Craig Carriero, J.), rendered August 7, 2024, upon a verdict convicting defendant of the crime of sexual abuse in the first degree (three counts).
Defendant was charged by indictment with three counts of sexual abuse in the first degree. The indictment alleged that after a July 2018 high school reunion, defendant subjected his friend's wife (hereinafter the adult victim) to sexual contact when she was incapable of consent by reason of being physically helpless. The indictment further alleged that while at a campground in August or September 2019, defendant committed two additional acts of sexual abuse in the first degree, one involving the same adult victim and the other involving a child less than 11 years old (hereinafter the child victim). Following a jury trial, defendant was convicted as charged and County Court imposed consecutive determinate prison terms of five years on each conviction, to be followed by 10 years of postrelease supervision. Defendant appeals.
Defendant first contends that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Swartz, 235 AD3d 1098, 1099 [3d Dept 2025] [internal quotation marks and citations omitted]). In contrast, when assessing a weight of the evidence challenge, "we must first view the evidence in a neutral light to determine whether a contrary verdict would have been unreasonable; if not, we defer to the jury's credibility determinations and consider the relative probative force of conflicting testimony and the relative strength of the conflicting inferences that may be drawn therefrom to determine whether the weight of the evidence supports the verdict" (People v Benton, 243 AD3d 1118, 1119 [3d Dept 2025] [internal quotation marks and citations omitted]). As relevant here, a person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact and the other person is less than 11 years old or incapable of consent by reason of being physically helpless (see Penal Law § 130.65 [2], [3] [internal quotation marks omitted]). "Sexual contact means any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party" (Penal Law § 130.00 [3]). The sexual contact alleged here consisted of defendant touching each victim's vagina with his hand. A person is "[p]hysically helpless" when he or she is "unconscious or for any other reason is physically unable to communicate unwillingness to an act" (Penal Law § 130.00 [7] [internal quotation marks omitted]).
The trial proof established that the child [*2]victim, born in 2009, is the niece of the adult victim. Defendant was a close friend of the adult victim's husband since childhood. As a result of that longstanding friendship, defendant regularly socialized with the victims' family and joined them during visits to the campground in 2019, when certain offenses allegedly occurred. Those crimes were first reported by the victims to police in February 2023, after an unrelated shooting incident at a mall prompted the child victim to disclose to her grandmother via text message that defendant engaged in sexual contact with her during a camping trip in 2019. The grandmother forwarded that text message to the adult victim. After receiving the child's disturbing disclosure, the grandmother and the adult victim recalled an incident during a summer 2019 camping trip when the child reported blood in her underwear. At the time, they attributed the bleeding to the then-nine-year-old child's first menstrual period, which they considered unusual given her age. They further recalled that the child appeared withdrawn and distant that day. The People were able to discern from the adult victim's remote, contemporaneous text messages with other family members that the child victim reported her bleeding on August 31, 2019 or September 1, 2019.
The adult victim testified that the child's disclosure prompted her to recall two incidents involving defendant, one following a 2018 high school reunion and another during a 2019 camping trip, possibly the same night defendant allegedly abused the child victim. The July 2018 incident occurred after defendant, the adult victim and her husband attended a high school reunion where she consumed a significant amount of alcohol before returning home. She "passed out" and awoke to defendant engaging in sexual contact with her. When she mentioned it to her husband, he became angry and dismissive. With respect to the 2019 camping trip allegations, the adult victim testified that the adults in her party would socialize and drink alcohol at a campground recreation hall after the children went to bed. On the night in question, while the adult victim slept in a camper with defendant and others, she awoke to the sensation of defendant engaging in sexual contact with her. Although she did not consent, she did not scream or confront defendant due to both her shock and defendant's close relationship with her husband.
Before trial, defendant served a timely alibi notice disclosing as witnesses his ex-girlfriend and his mother, and he presented an alibi defense to the camping trip allegations. Defendant's ex-girlfriend testified that he was not at the campground on August 31, 2019 and September 1, 2019, but rather with her in the City of Ogdensburg, St. Lawrence County, which is located 30 miles from the campground. She relied on timestamped social media photographs admitted into evidence that purportedly depicted her and a friend at a well-known bar in Ogdensburg on the evening of August 31, [*3]2019; she acknowledged that none of the photographs depicted defendant at the bar. In rebuttal, the friend testified that defendant was not present at the bar that night.
Defendant's contention that the evidence is legally insufficient to establish the sexual contact element of sexual abuse in the first degree against the child victim is without merit, as the victim described conduct that satisfied the statutory definition of sexual contact (see Penal Law § 130.00 [3]). Defendant also contends that the People failed to establish his presence at the campground during the 2019 incidents. However, both victims identified defendant as present in the camper at the campground and testified that he committed the alleged offenses. Viewing the evidence in the light most favorable to the People, the proof was legally sufficient to establish defendant's presence at the crime scene during the 2019 incidents.
Defendant's claim that there was insufficient evidence to satisfy the physically helpless element of sexual abuse against the adult victim is also unavailing. "A person who is sleeping is physically helpless for the purposes of consenting to sexual [contact], particularly where the sleep was drug and alcohol induced" (People v Hatch, 230 AD3d 908, 909-910 [3d Dept 2024] [internal quotation marks, brackets and citation omitted], lv denied 42 NY3d 1020 [2024]). "The state of the victim's physical helplessness at any given moment is largely a question of fact" (People v Dunham, 172 AD3d 1462, 1464 [3d Dept 2019] [internal quotation marks and citation omitted], lv denied 33 NY3d 1068 [2019]). Here, the adult victim testified that she was asleep when defendant initiated sexual contact during the campground incident and that she awoke during the act. Similarly, she testified that she was intoxicated at the 2018 high school reunion, returned home and was "passed out" when she awoke to defendant engaging in sexual contact with her. That testimony, if credited, permitted the jury to find that she was physically helpless and unable to consent to sexual contact with defendant on each occasion (see Penal Law §§ 130.00 [7]; 130.65 [2]; People v Hatch, 230 AD3d at 912).
Turning to the weight of the evidence, the testimony "presented a classic he-said she-said credibility determination for the jury to resolve" (People v Njoku, 218 AD3d 1047, 1050 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 1093 [2024]). Defendant challenged the years-long delay in reporting the crimes; the lack of forensic evidence; the adult victim's self-doubt about her perception of the crimes; the close quarters shared by defendant, the victims and witnesses; and inconsistencies in the trial testimony as to whether defendant's ex-girlfriend was also present when the child victim was abused. As such, a different verdict would not have been unreasonable as to any of the convictions. With respect to the 2018 post-reunion incident, the adult victim conceded her [*4]intoxication, acknowledged that she initially questioned whether the assault was a dream or whether it truly occurred, and explained why she did not report the incident earlier. Similarly, the jury heard each victim explain reasons why they delayed disclosure of the 2019 campground incidents, until a traumatic event in 2023 prompted latent memories to surface. Defendant squarely challenged the credibility and logic of each victim's explanation for delaying their reports of the crimes. Defendant vigorously cross-examined each victim regarding claimed inconsistencies in their accounts and he presented an alibi supported by timestamped photographs. The People, in turn, offered rebuttal proof challenging the reliability of defendant's alibi evidence. The jury evidently credited the victims' testimony, which was not inherently unbelievable or incredible as a matter of law (see People v Gomez, 244 AD3d 1382, 1384 [3d Dept 2025], lv denied 45 NY3d 936 [2026]), and rejected defendant's alibi evidence. "Thus, having weighed the relative probative force of conflicting testimony and the relative strength of the inferences to be drawn therefrom, the verdict is supported by the weight of the evidence" (id. at 1384-1385 [citations omitted]).
Next, we address defendant's argument that County Court erred in (1) permitting the People to call a witness to rebut defendant's alibi and (2) denying defendant's request for an adjournment after it granted the People's request for rebuttal. Upon demand by the People, a defendant who intends to offer an alibi defense must disclose in a notice the places where defendant claims to have been at the relevant times and contact information for each alibi witness (see CPL 250.20 [1]). The statute imposes reciprocal obligations upon the People to disclose rebuttal witnesses who may discredit the defendant's alibi at trial (see CPL 250.20 [2]; People v Crevelle, 125 AD3d 995, 996-997 [2d Dept 2015]).
Here, defendant timely served a notice of alibi stating that he intended to call his mother and his ex-girlfriend to testify that he was at some place other than the crime scene when the crimes purportedly occurred in August or September 2019, as alleged in the indictment. Defendant lived with his ex-girlfriend in the summer of 2019, so he intended to rely upon her testimony to establish his whereabouts in August and September 2019. The prosecution neither objected to defendant's alibi notice nor served its own notice of alibi rebuttal witnesses before trial as required by CPL 250.20 (2).
On the first day of trial, May 28, 2024, the People claimed that defendant's alleged offenses against the child victim at the campground occurred during the late evening of August 31, 2019. Defense counsel promptly contacted defendant's ex-girlfriend, who reviewed her social media accounts and located photos depicting her at a bar in Ogdensburg, 30 miles away from the campground that night, after four prosecution witnesses testified that she was present [*5]with defendant in the camper where the offenses occurred. Defendant promptly disclosed those photographs to the People.
On Friday May 31, 2024, the ex-girlfriend testified that defendant was with her and her friend at a bar in Ogdensburg on August 31, 2019, and that her friend drove defendant home that night. She offered the photos that depicted her and her friend; she also testified that defendant accompanied her to the bar, though he did not appear in any of her photos. After she testified, defendant rested and moved for a trial order of dismissal. County Court denied defendant's motion, then discussed the jury charge with counsel. Before recessing for the weekend, the prosecutor stated his intent to call the friend depicted in the bar photos as a rebuttal witness when trial resumed on Monday. County Court acknowledged the prosecutor's intention and heard an offer of proof that the rebuttal witness would testify that she recalled the night in question, possessed pictures and video from that night at the bar, and that defendant was not present. No application concerning rebuttal proof was made by either party before the proceedings adjourned for the weekend. Over the weekend, the People provided defense counsel with the proposed rebuttal witness's telephone number and video recordings from the bar. The People did not serve a formal written notice of a rebuttal witness.
Before trial resumed on Monday, defendant filed a motion to preclude the rebuttal witness or, alternatively, for an adjournment not to exceed three days to investigate, citing CPL 250.20 (3), (4). The prosecution opposed preclusion but took no position on the request for an adjournment. County Court denied both motions, reasoning that defendant could have investigated the rebuttal proffer over the weekend and that the rebuttal witness was not a surprise, given her appearance in the photos produced by a defense witness. The rebuttal witness then testified that she was present at the bar with defendant's ex-girlfriend and that defendant was not there; contrary to the ex-girlfriend's testimony, the friend testified that she did not drive defendant home from the bar. The People introduced several video recordings depicting defendant's ex-girlfriend at the bar socializing and dancing with another man. In summation, the People relied on this testimony to discredit the ex-girlfriend's claim that defendant could not have committed the crimes because he was with her in Ogdensburg when the offenses occurred.
Initially, we find that County Court providently exercised its discretion when it permitted a rebuttal witness to testify even though she was not disclosed in a formal notice. When a party seeks to call a witness to testify about a defendant's alibi without serving a timely notice, the trial court may exclude the witness or permit the witness to testify for good cause (see CPL 250.20 [2], [3], [4]; People v Crevelle, 125 AD3d at 996-997). Although the People failed to serve notice of [*6]a rebuttal alibi witness, it was within County's Court discretion to allow the witness to testify about a material issue. As the record contains no indication that the People's delay in providing notice was willful or designed to gain a strategic advantage (see People v Thomas, 208 AD3d 1617, 1620 [4th Dept 2022]; People v Perkins, 166 AD3d 1285, 1287 [3d Dept 2018], lv denied 33 NY3d 980 [2019]; compare People v Crevelle, 125 AD3d at 998), County Court did not err by allowing the rebuttal witness to testify.
However, we reach a different conclusion when reviewing denial of defendant's request for a brief adjournment. The trial court may, in the exercise of its discretion, receive belatedly disclosed rebuttal testimony, " 'but before doing so, it must, upon application of the [P]eople [or the defendant], grant an adjournment not in excess of three days' " (People v Holmes, 82 AD2d 61, 63 [3d Dept 1981], quoting CPL 250.20 [3]; see CPL 250.20 [4]; People v Buono, 121 Misc 2d 854, 859 [Sup Ct, Bronx County 1983], affd 131 AD2d 981 [1987], lv denied 70 NY2d 798 [1987]; compare People v Cade, 138 AD2d 388, 388 [2d Dept 1988], affd 73 NY2d 904 [1989]). We therefore conclude that County Court erred when, after granting the prosecution's request to offer rebuttal proof on Monday, it then denied defendant's application for any adjournment before the prosecution called its rebuttal witness (see People v Holmes, 82 AD2d at 62, citing Wardius v Oregon, 412 US 470 [1973]). Given that proof of defendant's guilt without the rebuttal witness' testimony was "not overwhelming," the error cannot be deemed harmless (People v Holmes, 82 AD2d at 63).
In determining whether an error in the proceedings relating to one count requires reversal of the conviction of other jointly tried counts, we apply "[s]pillover analysis" and evaluate "the individual facts of the case, the nature of the error and its potential for prejudicial impact on the over-all outcome" (People v Allen,32 NY3d 611, 620 [2018] [internal quotation marks and citations omitted]). "[I]f there is a reasonable possibility that the jury's decision to convict on the tainted counts influenced its guilty verdict on the remaining counts in a meaningful way," reversal is required (id. [internal quotation marks and citations omitted]). Because resolution of all three counts here hinged on the jury's assessment of the victims' credibility and the veracity of the defense claims, there is a reasonable possibility that the decimation of defendant's alibi by the rebuttal evidence meaningfully influenced the jury's guilty verdict on the 2018 count (see People v Allen,32 NY3d at 620, citing People v Morales,20 NY3d 240, 250 [2012]; People v Baghai-Kermani,84 NY2d 525, 532 [1994]; compare People v Casatelli,204 AD3d 1092, 1096-1097 [3d Dept 2022], lv denied 38 NY3d 1132). The rebuttal proof, received without affording defendant a brief adjournment to investigate, cast defendant's alibi witness as unscrupulous and [*7]incredible. Under these unusual circumstances, we reverse defendant's convictions and order a new trial on all counts (see People v McDaniel, 81 NY2d 10, 20 [1993]; People v Swartz,235 AD3d at 1102).
Defendant's remaining contentions are either unpreserved or rendered academic by our determination. However, we address certain evidentiary issues in anticipation of a new trial. First, we are unpersuaded by defendant's contention that a photograph depicting the adult victim at the campground, with defendant's arm visible in the background, should have been precluded as irrelevant because it was purportedly taken in the autumn of 2019 after the alleged crimes and because it created a substantial risk that the jury would view it as proof that he was present at the campground during the relevant August 2019 weekend. "Evidence is relevant if it tends to prove the existence or non-existence of a material fact, i.e., a fact directly at issue in the case" (Matter of Zielinski v Venettozzi, 35 NY3d 1082, 1087 [2020, Wilson, J., dissenting] [internal quotation marks and citation omitted]). The photograph was properly received for the relevant purposes of depicting the adult victim's presence at the campsite during the summer and early fall of 2019 and corroborating testimony that defendant joined the victims' family for camping trips during this time. Notably, the presence of defendant's arm in the photo was raised not by the People, but rather by defense counsel during voir dire of the exhibit. Nor did the photograph's admission require a circumstantial evidence charge, as both victims directly identified defendant as the perpetrator of the charged conduct (see People v Hardy, 26 NY3d 245, 249 [2015]; People v Butts, 244 AD3d 1479, 1487 [3d Dept 2025], lv denied ___ NY3d ___ [Mar. 11, 2026]).
County Court also properly admitted video recordings taken by the rebuttal witness at the Ogdensburg bar. The rebuttal witness testified that she made the recordings and that they accurately depicted what she observed, thereby providing an adequate foundation for their admission (see Matter of M.S. [M.H.], ___NY3d___, ___, 2026 NY Slip Op 00825, *9 [2026, Singas, J., dissenting]; accord People v Patterson, 93 NY2d 80, 84 [1999]). Although her voice was inadvertently superimposed when she used her own phone to re-record the videos before providing them to the prosecution in a usable exhibit form, she testified that this portion of the audio was not part of the original recording and that the visual content was unaltered. Contrary to defendant's claims, any "uncertainty" arising from the re-recording process "went to the weight to be accorded the evidence rather than its admissibility" (People v Colon, 243 AD3d 1340, 1342 [4th Dept 2025] [internal quotation marks and citations omitted], lv denied 45 NY3d 936 [2026]), and County Court therefore did not abuse its discretion in admitting the videos. We need not address defendant's other arguments in light of our determination[*8].
Clark, J.P., Aarons, Ceresia and McShan, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of St. Lawrence County for a new trial.